**In re Floyd Edward JUMP, Wilma Erlene Jump, Debtors.**

**Irvin RAGLAND, Plaintiff,**

**v.**

**Floyd Edward JUMP, Wilma Erlene Jump, Defendants.**

**Bankruptcy No. 3–84–01099.**
**Adv. No. 3–84–0084(D).**

United States Bankruptcy Court,
W.D. Kentucky.

Dec. 6, 1985.

Glenn L. Schilling, Louisville, Ky., trustee.

Barry Birdwhistell, Elizabethtown, Ky., for plaintiff.

Jon E. Rickert, Elizabethtown, Ky., for debtors.

MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

The debtor who files bankruptcy a second time makes his creditors twice as angry. That is the primary lesson, and perhaps the only one, to be learned from the case under consideration.

The complaint seeks the ultimate sanction of complete denial of a bankruptcy discharge. It is without substance. Before describing and dismissing the various components of the complaint, we will gen-

erally track the chronology of this convoluted and troubled case.

Floyd and Wilma Jump filed bankruptcy the first time on November 4, 1982, only weeks after being sued by the plaintiff here, Irvin Ragland, for $9,000 in unpaid rent.

The Jump case proceeded through the routine of bankruptcy administration, during the course of which, due primarily to the efforts of debtors' counsel, certain property of the Jumps was sold by the trustee at a significantly higher price than the trustee, or even the Jumps themselves, thought the property would bring.

The unanticipated yield prompted the Jumps to move for voluntary dismissal of their petition, to allow them to personally pay their creditors and thus avoid the stigma of bankruptcy. Their case was dismissed without prejudice in October, 1983.

Meanwhile the trustee had reduced assets to cash in the amount of $123,241. After the payment of secured claims and costs of administration, including attorneys fees for the trustee and debtor, a remaining balance of $16,812 was remitted to the debtors on their motion.

After the dismissal the Jumps were confronted with unanticipated expenses caused by the death of a family member, despite which they were able to apply a major portion of the $16,812 to payment of various creditors. But the plaintiff Irvin Ragland was not among them. He reinstated his state court action against the Jumps and was awarded a $9,000 judgment in May, 1984. Days later the Jumps again filed bankruptcy. It is in this more recent case that Ragland sues the Jumps, setting forth in his complaint in greater detail all of the facts generally recited above, alleging that when viewed as a whole those facts evidence a fraudulent scheme to delay and hinder creditors. Certain allegations concerning the conduct and compensation of counsel for the debtors are petty, snide, and unworthy of pleadings in a federal court or further comment here.

It is of crucial importance to our determination that the plaintiff Ragland: (a) had actual, timely notice of all motions and official court actions taken in the Jumps' first bankruptcy; (b) commenced no dischargeability action against the Jumps during that first bankruptcy; (c) entered no objection to the Jumps' motion for voluntary dismissal; (d) had actual notice of the Jumps' receipt of $16,812 and of their intention to apply that amount to the repayment of their debts; and (e) was subsequently informed through counsel of their inability to immediately repay the $9,000 debt. We may safely summarize that Ragland was on full, fair notice of every relevant action taken by the Jumps not only through the first bankruptcy but during the months that followed.

Section 727 of the Bankruptcy Code "is the heart of the fresh start provisions of the bankruptcy law", *H.Rep. No. 95–595, 95th Cong. 1st Sess. 384 (1977)*, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6340, and those exceptions allowing denial of a discharge must be construed liberally in favor of the debtor and strictly against the creditor. *See* 4 *Collier on Bankruptcy* ¶ 727.01A (15th Ed.1985).

Early on in this proceeding the creditor was allowed time within which to amend this complaint to state a cause of action. An amended complaint was thereafter filed, but it does no more to state a claim than did the original complaint. We have reviewed the entire file in this case, including court records, financial documents, memoranda and depositions, and not a single line or phrase can be found to reasonably create an inference of fraud. Quite to the contrary, the conclusion compels itself that the Jumps made every reasonable effort to satisfy the claims of their creditors, both in and out of bankruptcy court. Accordingly, and without need for further legal analysis, the defendants' demand for dismissal contained in their answer to the first amended complaint is sustained, and this action will be dismissed with prejudice. An appropriate order will be entered today.